**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-01917-001-TUC-JCH (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| James Mark Tuohy, | |
| Defendant. | |

Before the Court is Defendant James Mark Tuohy's ("Defendant") "Motion for Review of Magistrate Judges' Order of Detention" ("Motion"), filed pursuant to 18 U.S.C. § 3145(b). (Doc. 17.) Defendant appeals Magistrate Judge Bruce M. MacDonald's November 29, 2022, Order detaining Defendant pretrial. (Doc. 17.) The Government opposes the Motion. (Doc. 19.) For the following reasons, the Court denies the Motion.[1]

**I.    Background**

Subject to a crime suppression operation led by the Bureau of Alcohol, Tobacco, and Firearms (ATF), law enforcement observed and tailed a vehicle driven by Defendant in Tucson on or about February 22, 2021. (Doc. 19 at 2.) Eventually, law enforcement initiated a traffic stop and discovered that both Defendant and his passenger had outstanding warrants. (*Id.* at 2–3.) Officers arrested Defendant based on the outstanding warrant. (*Id.*) Upon processing Defendant's vehicle, officers discovered a suspected improvised explosive device in the fabric pocket located behind the driver's sear. (*Id.*)

---

[1] The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv. 7.2(f).

Officers provided *Miranda* warnings to Defendant, and he agreed to an interview. (*Id.*) During his recorded interview, Defendant admitted that he knew the device was in the vehicle, he knew who made the device, and described how he obtained the device. (*Id.*)

On September 1, 2022, a grand jury indicted Defendant on a single charge related to Possession of an Unregistered Firearm in violation of Title 26, United States Code, Sections 5861(d), 5845(a)(8) and (f), 5841, and 5871. (Doc. 1; Doc. 19 at 3.) The indictment charges Defendant with knowingly possessing "an improvised explosive device … constructed using a metal compressed gas cylinder containing a quantity of smokeless powder explosive with a fuse and designed to function by explosion, an explosive bomb …." (*Id.* at 1.) An arrest warrant issued on the same date. (Doc. 2.) On November 15, 2022, Defendant self-surrendered to the U.S. Marshals Service after his State probation officer informed him of the outstanding arrest warrant. (*See* Doc. 17 at 2.)

At Defendant's initial appearance on November 16, 2022, the Court granted the Government's motion for detention and set a detention hearing. (Doc. 8.) In the interim, Pretrial Services recommended that Defendant be detained based on an assessment of nonappearance and danger to the community. (Doc. 5 at 5.) On November 17, Pretrial Services amended their report and recommended release finding that a combination of certain conditions would reasonably minimize any nonappearance and danger risks.[2] (Doc. 9.) At the joint detention hearing and arraignment, held on November 18, Magistrate Judge Leslie A. Bowman ordered Defendant detained. (Doc. 10.) On November 21, 2022, Defendant filed a motion to review the detention order. (*See* Doc. 12.) Magistrate Judge Bruce G. Macdonald set a hearing on the motion. (Doc. 13.) On November 29, 2022, Judge Macdonald held a continued detention hearing, denied the motion, and affirmed the detention order. (*Id.*) This appeal followed.

Defendant now moves the district court to revoke the detention order, under 18 U.S.C. § 3145(b), and release him under the conditions recommended by Pretrial Services in their addendum reports. (Doc. 17 at 4; *see* Doc. 9; *see also* Doc. 15.)

---

[2] Pretrial Services filed a second addendum on November 29, 2022. (Doc. 15.) The Court has considered all three reports from Pretrial Services. (Docs. 5, 9, 15.)

- 2 -

## II. Legal Standard

A district court's review of a magistrate judge's detention order is de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates the release of a person pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). It is presumed that there are no such conditions if there is probable cause to believe that the defendant has violated a provision of the Controlled Substances Act or the Controlled Substances Import and Export Act punishable by at least 10 years in prison. 18 U.S.C. § 3142(e)(3)(A). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). If defendant proffers evidence to rebut the presumption of dangerousness or flight risk, the Court then considers four factors in determining whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release

(*Id.*; 18 U.S.C. § 3142(g).) The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). A finding that a person presents a danger to the

community must be proved by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in Defendant's favor. (*Id.* at 1405). However, the presumption against release remains, even when rebutted, and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

### III.  Analysis

The Bail Reform Act creates a rebuttable presumption that a defendant must be detained if there is probable cause to believe he committed a felony involving the possession of a destructive device, as defined in 18 U.S.C. § 921(a)(4). *See* 18 U.S.C. §§ 3142(e)(2)(A), 3142(f)(1)(E). Based on Defendant's post-*Miranda* statements to law enforcement wherein he admitted that he knew the device was in the vehicle, he knew who made the device, and he described how he obtained the device, the Court finds that such probable cause exists. Therefore, the burden shifts to Defendant to proffer evidence to rebut dangerousness or flight risk. Defendant offers his compliance with State probation, his ties to Arizona, and his ability to comply with court orders, in support of his pretrial release. (Doc. 17 at 3–4.) He argues that there are conditions which will ensure his future appearance in this matter. (*Id.* at 4.) Defendant does not overcome the presumption, but the Court will consider the § 3142(g) factors nonetheless.

#### A.  Bail Reform Act Factors

##### 1.  Nature and Circumstances of the Offense

The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting that the defendants faced a greater penalty after being charged with multiple counts with possible maximum sentences that could be served consecutively, which provided a greater incentive to consider flight).

Here, Defendant is charged with Possession of an Unregistered Firearm in violation of Title 26, United States Code, Sections 5861(d), 5845(a)(8) and (f), 5841, and 5871. (Doc. 1.) The pending charge carries a 10-year mandatory statutory minimum prison

sentence if Defendant is convicted, (*See* Doc. 19 at 7), and the nature and circumstances of the offense charge involve a "firearm, explosive, or destructive device" as contemplated by 18 U.S.C. §§ 3142(g)(1). Accordingly, this factor weighs against Defendant.

## 2. Weight of the Evidence Against Defendant

The weight of the evidence is the least important of the four factors that a court must consider. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985); *Townsend*, 897 F.2d at 994.  Here, the discovered device coupled with Defendant's statements during his post-*Miranda* interview, wherein he admitted to knowingly possessing the device, weigh against Defendant. (*See* Doc. 19.)

## 3. History and Characteristics of Defendant

In verifying personal information, Pretrial Services twice interviewed Defendant's assigned Pima County Adult Probation officer Carlos Santiago ("Officer Santiago"), (*see* Doc. 9 at 1.) and Defendant's girlfriend Ms. Nicole McKay ("Ms. McKay"), whom he has dated for five years (Doc. 9 at 2).

Defendant is a 51-year-old man who has lived in Arizona since 2008. (Doc. 8 at 2.) For 14 months he has resided at the same address with his girlfriend Ms. McKay.[3] (*Id.*) Born in Daytona Beach, Florida, Defendant has also lived in Maryland, New York, and Minnesota. (Doc. 5 at 2.) Defendant's mother and five siblings live in the United States, although their exact location is uncertain. (*Id.* at 2.) Defendant is divorced and has two adult children, from his marriage, who live in the United States. (*Id.*) Defendant reported no medical problems, no past or current mental health history, and denied use of any illicit substances. (*Id.* at 2–3.) Ms. McKay verified Defendant's physical health, mental health, and absence of substance abuse. (*Id.*)

Although Pretrial Services found Defendant posed a nonappearance risk based on "his uncertain status of employment," Officer Santiago verified Defendant's employment. *Compare* Doc. 5 at 2 *with* Doc. 5 at 5. Defendant has maintained full-time employment for

---

[3] Ms. McKay indicates she is willing to serve as a third-party custodian, however, due to her previous criminal history, Pretrial Services did not find her to be a suitable custodian. (Doc. 9 at 2.)

- 5 -

13 months as a pre-delivery inspection tech with La Mesa RV, and is currently pursuing a promotion. (Doc. 5 at 2.) All these factors weigh in Defendant's favor.

Defendant's criminal history and failure to abide by Court conditions weigh against him. Defendant's criminal history spans decades, includes four states and eleven cities. (Doc. 19 at 6.) Defendant has seven misdemeanor convictions and four violent felony convictions including one for felony assault, burglary, and two convictions for being a felon in possession of a firearm. (*Id.*) Although three of those felony convictions are older than ten years, one felony and three misdemeanor convictions are less than ten years old. (*See* Doc. 5 at 3–4 (2013 conviction for misdemeanor violation of promise to appear in TR13060168; 2014 conviction for misdemeanor knowingly displacing false license plate and misdemeanor driving on a suspended license in TR20140909; 2015 conviction for misdemeanor failure to appear in TR0020131930; and 2020 conviction for felony burglary in CR20170945-003)). In the most recent felony conviction from 2020, Defendant, along with another co-defendant, burglarized a home while armed with a shotgun. (Doc. 19 at 6.) For this offense, Defendant was sentenced to three years' probation, for which he was on absconder status for 13 months, when he was arrested for this matter. (*Id*. at 5.) Defendant has a pending misdemeanor case in CM20017411, involving charges of criminal trespass and failure to appear, for which there remains an active warrant. (Doc. 5 at 4.)

Defendant offers compliance evidence mitigating against flight risk based on his success on intensive supervision since his arrest in the instant case, on February 22, 2021, and the state court's decision to not revoke probation. (Doc. 17 at 3–4.) The Court rejects this argument for the following reasons. At the time of the instant offense, Defendant was on a term of probation and on absconder status. Defendant currently has an active warrant, for misdemeanor trespass and failure to appear, that he has not resolved. (Doc. 19 at 3.) Defendant failed to disclose the nature of his contact with law enforcement in February 2021 to his probation officer or the state court judge. ATF was unable to locate Defendant based on the indictment warrant for nearly two months before Defendant turned himself in. (*See* Doc. 19 at 3.) In sum, Defendant's demonstrated inability to follow the state court's

- 6 -

instructions, namely, to not violate any federal, state, or local law, does not dissipate simply because he has shown *some* compliance with his other probation conditions since February. Considered together, this factor weighs against Defendant.

### 4. Dangerous Nature

The Government also argues that Defendant is a danger to the community because he has been "involved in the unlawful possession of firearms for some time, not just as a prohibited possessor but also in conjunction with the commission of other offenses." (Doc. 19 at 8.) Here, the Court is particularly concerned with the danger posed to the community based on the underlying factual circumstances: Defendant is alleged to have driven his vehicle to visit two hotels and a fast-food restaurant while knowingly carrying an explosive device. Bombs are inherently dangerous weapons for which no peaceful purpose can be seriously suggested in their use or transportation. The Court finds that the Government has proven by clear and convincing evidence that Defendant poses a risk of danger to the community, based on: (1) the nature of the instant offense for which he is being prosecuted; (2) Defendant's prior arrests and convictions, some of which involved violent behavior; (3) Defendant's history of weapons use; (4) Defendant's record of non-compliance with supervised release; and (5) safety concerns for the local community. This factor weighs against Defendant.

## IV. Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of flight risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk. *See* 18 U.S.C. § 3142(e). Moreover, the risk of flight must be "serious." 18 U.S.C. § 3142(f)(2)(A). Here, there are no conditions of release that would assure the defendant's future presence in court, nor keep the community safe from further crimes by the Defendant.

///

## V. Order

After a de novo review, the Court concludes: (1) the government has proven by a preponderance of evidence that Defendant presents a serious flight risk; (2) the government has proven by clear and convincing evidence that Defendant presents a danger to the community; and (2) no condition or combination of conditions will secure Defendant's appearance as required. Accordingly,

**IT IS ORDERED DENYING** Defendant's Motion for Review of Magistrate Judges' Order of Detention (Doc. 17) and **AFFIRMING** Magistrate Judge Bruce M. MacDonald's November 29, 2022 Detention Order. (Doc. 16.) Defendant shall remain detained pending trial.

Dated this 8th day of December, 2022.

_____
Honorable John C. Hinderaker
United States District Judge