JON M. SANDS
Federal Public Defender
ÁNGELES RODRÍGUEZ-MADERA
Assistant Federal Public Defender
Puerto Rico Bar No. 20912
*Angeles_Rodriguez-Madera@fd.org*
MATEI TARAIL
Assistant Federal Public Defenders
State Bar No. 024566
matei_tarail@fd.org
407 W. Congress St., Suite 501
Tucson, AZ  85701
Telephone: (520) 879-7500
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | CR-22-01917-TUC-JCH(BGM) |
|---|---|
| Plaintiff, | MOTION TO INTRODUCE PORTION'S OF DEFENDANT'S POST ARREST STATEMENT |
| v. | |
| James Mark Tuohy, | (ECF Doc. 56) |
| Defendant. | |

Mr. James Tuohy, through undersigned counsel, moves the Court to permit him to introduce portions of his post-arrest statement to ATF agents pursuant to Fed. R. Evid 106 and the due process clause of the U.S. Constitution. U.S. Const. amend V, VI.

Mr. Tuohy submits the following memorandum in support of the motion.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

The government has provided notice of their intent to introduce Mr. Tuohy's confessions, admissions, and statements under LRCrim. 16.1(a). Should the Court conclude that a statement by Mr. Tuohy is admissible against him based on an exception to the rule hearsay exclusion, Mr. Tuohy moves the Court to admit portions of the remainder of the statement that in fairness should be heard by the finder of fact, pursuant to Fed. R. Evid. 106.

Mr. Tuohy provides this Motion to the Court for its consideration, should it permit the government to introduce Mr. Tuohy's post-arrest statement to law enforcement over the defense's objection.

1. THE STATEMENT

Mr. Tuohy gave a statement to ATF SA Korn shortly after his arrested on the date of the alleged offense. Defense counsel would conservatively estimate at least 75% of this interview involved questions unrelated to the alleged explosive device Mr. Tuohy was charged with. The interview was audio recorded, but the quality of the recording is exceedingly poor.

Most of the statements that Mr. Tuohy provided are either irrelevant to his charges under Rule 401 or highly prejudicial under Rule 403. For these reasons, Mr. Tuohy does not move the Court to present the entire recorded interview to the finders of fact. He asks the Court to present statements surrounding alleged statements against interest, which the finder of fact in fairness must hear to avoid any misunderstanding as to what Mr. Tuohy told law enforcement in full.

2. LAW

Under Rule 106, Fed. R. Evid., "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – *that in fairness ought to be considered at the same time*." (emphasis added). "[T]he rule of completeness is violated…only where admission of the statement in its edited form *distorts the meaning of the statement or excludes information substantially exculpatory of the defendant*." *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir. 1982) (emphasis added). The rule of completeness "exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document. *U.S. v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014), citing *Beech Aircraft Corp v. Rainey*, 488 U.S. 153 (1988). The proper application of the Rule of Completeness rests within the discretion of the trial judge. *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981), cert. denied, 454 U.S. 830 (1981).

Federal Rule of Evidence 106 encapsulates a general principle of fairness applicable when a party seeks to introduce only part of a statement. "The objection to the introduction of an interrupted or unfinished confession emanates from the broader principle that when a confession is introduced it is the defendant's right that all, and not just a part of it, be produced." *United States v. Wenzel*, 311 F.2d 164 (1962). This general concept has been summarized:

> The rule of completeness requires that a statement be admitted in its entirety when it is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion. Thus, if a statement is admissible in

evidence as an admission or declaration, it is admissible as an entirety, including parts that are unfavorable, as well as those that are favorable, to the party offering it in evidence. If a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent may have placed in evidence all that was said or written by or to the declarant in such conversation or correspondence, provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence, and are equally trustworthy. That the additional and qualifying statements may be favorable to the party offering them – may be self-serving – has been said to afford no basis for excluding them. However, the general rule providing for the admissibility of all that was said by the declarant simultaneously and upon the same subject matter does not extend to subjects which are remote and distinct from the object of inquiry at the trial. 29A Am. Jur. 2nd Evid. § 772.

When the admission of only a portion of a conversation, or written or recorded statement, would mislead the jury, the admission of the redacted statement violates the defendant's Fifth and Sixth Amendment right to a fair trial. See, e.g., Greene v. Lambert, 288 F. 3d 1081, 1090 (9th Cir. 2002) ("Whether rooted in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of Sixth Amendment, the Constitution guarantees criminal defendant a meaningful opportunity to present a complete defense".)

3. ARGUMENT

Mr. Tuohy anticipates that the government will seek to introduce a recorded post-arrest statement that: "I've seen that in there before." AUSA disclosure, p. 71. Mr. Tuohy presumes that the government would seek to introduce this statement as evidence of his knowledge of the existence of the alleged explosive device and circumstantial evidence that he possessed it on the date of the alleged offense.

Providing that statement to the jury while excluding the statements that immediately accompany it would distort the statement's meaning, mislead the jury as to the import of the words, and exclude substantially exculpatory information. In fairness, the jury should also hear the rest of that section of the transcript.

The issue of the alleged explosive device did not arise in the interview until ATF SA Korn mentioned "some fireworks" found in the car. It appears that both Mr. Tuohy and SA Korn then simultaneously said "CO2" (referring to the device's small aluminum cannister, a CO2 cartridge). A few seconds later, Mr. Tuohy told the agents that the item was a "gag gift". He made that comment several times. (The "gag gift" statement is not in the government's transcript. The transcriber likely made an unintelligible notation. but SA Korn noted hearing this comment. AUSA disclosure, p. 23. Defense counsel has listened closely to the audio and heard the "gag" comment several times).

Mr. Tuohy then said: "I don't think there's anything in them, I hope there ain't nothing in them for God's sake." AUSA disclosure, p. 71. It would distort the meaning of Mr. Tuohy's statement that he had seen the item "in there before" without the jury also hearing these surrounding statements. Contemporaneously with stating that he had "seen that in there before", Mr. Tuohy told SA Korn what he knew or believed to know about the properties of the alleged device. He believed the device to be a "gag" and to be empty. He did not believe that the Co2 cannister contained explosive material. The surrounding evidence regarding how the device was handled is consistent with someone who doesn't believe the device was dangerous. Agents found the alleged device in a seat pocket in the rear of the driver's seat that Mr. Tuohy occupied at the time the car was stopped. When Mr. Tuohy

5

was driving the car immediately prior to the car stop, the device was a few inches away from his lower back.

The context of this statement is also important. Prior to SA Korn bringing up the issue of the "fireworks", agents had solely questioned Mr. Tuohy about his knowledge of criminal activity wholly unrelated to the "fireworks". SA Korn brought up "fireworks" out of the blue, changing the subject from a number of prior questions. Any claim that Mr. Tuohy's statements regarding the properties of the alleged device being self-serving hearsay are diminished here, as the agents had not indicated that "fireworks" was the primary subject of their investigation. As a general matter, a statement that might otherwise be excluded as self-serving hearsay may be introduced under Rule 106 when, in context, it is necessary to avoid jurors being misled about the import of a defendant's statement.

In another section of the post-offense interview, after another lengthy discussion of issues unrelated to the alleged explosive device, Mr. Tuohy stated: "yeah, it's in there…it's in that [unidentified words], I had [unidentified words] toolbox." AUSA disclosure, p. 82

Some context is necessary to understand this statement. When agents told Mr. Tuohy that they had found a "fireworks"-like device in the car, they did not tell him where they found it. Mr. Tuohy's above statement would suggest that he thought the item had been found in his toolbox. The item was not found there.

After Mr. Tuohy made this statement, ATF SA Korn asked him if: "Dino bought it from Bo or Bo gave it to Dino." Mr. Tuohy answered in a matter that indicated that he did not know the answer to that question. He said that Bo *probably* gave it to him [Dino] because Mr. Tuohy did not have tools there (i.e. around Bo). (Emphasis added).

6

What Mr. Tuohy is stating, as the portions of the transcript immediately around this section indicate, is that he doesn't know how the alleged explosive device got into the car. He can only speculate. He believes Bo made the alleged device and provided it to Dino. Dino stole his toolbox, but he later got it back. He suspects that Dino put the device in the toolbox when he had possession of it, mingling his property with Mr. Tuohy's. When he put the toolbox in the car he was driving on the day of the offense, the alleged device must have still been in it.

If the Court allows the government to introduce the statement: "yeah it's in there", in lieu of presenting information from the transcript that is unduly prejudicial, Mr. Tuohy asks the Court to allow defense counsel to complete the above statement through SA Korn. Defense counsel would confirm through SA Korn that Mr. Tuohy identified another person that he believed had made the device. That person gave it to a second person. That second person stole Mr. Tuohy's toolbox with tools in it, but Mr. Tuohy later got the toolbox back from him. Mr. Tuohy believed that the second person had placed the device in the toolbox when he had possession of it. (Agents located a toolbox in the vehicle Mr. Tuohy was driving on the date of the offense).

It is important that the jury receive this information so that they have a proper context for Mr. Tuohy's statement "it's in there." Although Mr. Tuohy acknowledged that the item was "there", at no point did he indicate any ownership or propriety interest in it. By identifying the person, he believed had made the item, he implicitly denied making it himself. And he provided SA Korn with a best guess explanation as to how the item had ended up in the car.

According to the statutory provision, the term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. sec. 5845(a)(8) and (f). Considering that the definition of destructive device includes a subjective element, the defendant is entitled to present relevant evidence regarding his knowledge of the device. The fact that he gave agents the name of the person that he believed had fabricated the alleged device is relevant evidence that he did not fabricate it. No evidence contradicts the assertion that Mr. Tuohy did not fabricate the item. The fact that Mr. Tuohy was offering agents speculative answers regarding how the device got into the vehicle is circumstantial evidence that he did not assert ownership or possession of it. Without this information, a jury is highly likely to conclude that by Mr. Tuohy stating, "it's in there", he was asserting that he possessed it or that it was his property.

4.  CONCLUSION

When the Government seeks to introduce an otherwise-admissible prior statement in isolation, distorting the meaning or context of the statement, Rule 106 allows a defendant to introduce additional parts of the statement which, in fairness, give the statement context. That basic principle applies here, and the statements that Mr. Tuohy made adjacent to those the government seeks to introduce should be provided to the jury.

The basic rule that "frowns upon incomplete confessions is designed to cover cases where an accused, after admitting commission of the criminal act, is prevented from going further and saying anything which might explain or justify his act." 311 F.2d. at 169.

The Advisory Committee Notes to Rule 106 state this rule is based on two considerations. First, the rule protects against "the misleading impression created by taking

matters out of context." Second, Rule 106 safeguards against "the inadequacy of repair work when delayed to a point later in the trial."

Mr. Tuohy's jury would be misled, should they hear only a section of Mr. Tuohy's statement without the surrounding context. They would be left with the impression that Mr. Tuohy knew that the item was a "firework" or an explosive device, even though Mr. Tuohy told agents that he believed the item was a "gag" and that he thought the $CO_2$ chamber was empty. The jurors would also conclude that Mr. Tuohy was the owner of the device, knew it was inside of the vehicle, possessed it, and intended for it to be used as a weapon, despite the contextual information provided supra.

For the reasons stated above, the Rule of Completeness applies to Tuohy's statement. If the government seeks to introduce cherry-picked excerpts from Tuohy's interview that give the jury the misleading impression that he confessed guilt, the defense should be given the opportunity to introduce surrounding portions of the statement relevant to this issue.

RESPECTFULLY SUBMITTED:    July 24, 2023

JON M. SANDS
Federal Public Defender

*s/Ángeles Rodríguez-Madera & Matei Tarail*
ÁNGELES RODRÍGUEZ &
MATEI TARAIL
Assistant Federal Public Defenders